PLAN DOCUMENT AND
SUMMARY PLAN DESCRIPTION
FOR

COMMUNITY CONNECTIONS, INC.
EMPLOYEE BENEFIT PLAN

EXHIBIT 1



Peters- - 000001

**Non-Formulary Drug** is any brand name drug that does not appear on the list of Formulary Drugs.

**Orthodontic Treatment** is the corrective movement of teeth to treat a handicapping malocclusion of the mouth.

**Outpatient Care and/or Services** is treatment including services, supplies and medicines provided and used at a Hospital under the direction of a Physician to a person not admitted as a registered bed patient; or services rendered in a Physician's office, laboratory or X-ray facility, an Ambulatory Surgical Center, or the patient's home.

**Pharmacy** means a licensed establishment where covered Prescription Drugs are filled and dispensed by a pharmacist licensed under the laws of the state where he or she practices.

**Physician** means a Doctor of Medicine (M.D.), Doctor of Osteopathy (D.O.), Doctor of Podiatry (D.P.M.), Doctor of Chiropractic (D.C.), Audiologist, Certified Nurse Anesthetist, Licensed Professional Counselor, Licensed Professional Physical Therapist, Master of Social Work (M.S.W.), Midwife, Occupational Therapist, Doctor of Dental Surgery (D.D.S.), Physiotherapist, Psychiatrist, Psychologist (Ph.D.), Speech Language Pathologist and any other practitioner of the healing arts who is licensed and regulated by a state or federal agency and is acting within the scope of his or her license.

**Plan** means Community Connections, Inc. Employee Benefit Plan, which is a benefits plan for certain Employees of Community Connections, Inc. and is described in this document.

**Plan Participant** is any Employee or Dependent who is covered under this Plan.

**Plan Year** is the 12-month period beginning on either the effective date of the Plan or on the day following the end of the first Plan Year which is a short Plan Year.

**Pregnancy** is childbirth and conditions associated with Pregnancy, including complications.

**Prescription Drug** means any of the following: a Food and Drug Administration-approved drug or medicine which, under federal law, is required to bear the legend: "Caution: federal law prohibits dispensing without prescription"; injectable insulin; hypodermic needles or syringes, but only when dispensed upon a written prescription of a licensed Physician. Such drug must be Medically Necessary in the treatment of a Sickness or Injury.

**Qualified Medical Child Support Order (QMCSO)** is a judgment or decree by a court of competent jurisdiction or order issued through an administrative process established under state law that has the force and effect of state law that requires the Plan to provide coverage to the children of an employee pursuant to a state domestic relations law.

**Reasonableness** means that the Plan will only pay fee(s) that, in the administrator's discretion, are reasonable. The fee(s) must be for services or supplies which are necessary for the care and treatment of an Illness or Injury not caused by the treating provider. To be necessary, the service or supply must come with the recommendation and approval of a Physician. Determination that fee(s) are reasonable will be made by the Plan Administrator, taking into consideration: the fee(s) which the provider most frequently charges the majority of patients for the service or supply; the prevailing range of fees charged in the same "area" by providers of similar training and experience for the service or supply with "area" meaning a metropolitan area, county, or such greater area as is necessary to obtain a representative cross-section of providers rendering such service or furnishing such supplies; unusual circumstances or complications requiring additional time, skill and experience in connection with a particular service or supply; and the cause of injury or illness necessitating the charge(s).

This determination will consider, but will not be limited to, the findings and assessments of the following entities: (a) The National Medical Associations, Societies, and organizations; and (b) The Food and Drug Administration. To be reasonable, fee(s) must be in compliance with generally accepted billing practices for unbundling or multiple procedures. Services, supplies, care and/or treatment that results from errors in medical care that are clearly identifiable, preventable, and serious in their consequence for patients, are not reasonable. The (plan, claims, etc.) administrator retains discretionary authority to determine whether fee(s) are reasonable based upon information presented to the (plan, claims, etc.) administrator. A finding of provider negligence and/or malpractice is not required for fee(s) to be considered not reasonable.

Peters- - 000042

## HOW TO SUBMIT A CLAIM

**Benefits under this Plan shall be paid only if the Plan Administrator decides in its discretion that a Covered Person is entitled to them.**

When a Covered Person has a Claim to submit for payment that person must:

(1)     Obtain a Claim form from the Personnel Office, Human Resources Office or the Plan Administrator.

(2)     Complete the Employee portion of the form. ALL QUESTIONS MUST BE ANSWERED.

(3)     Have the Physician or Dentist complete the provider's portion of the form.

(4)     For Plan reimbursements, attach bills for services rendered. ALL BILLS MUST SHOW:

- Name of Plan
- Employee's name
- Name of patient
- Name, address, telephone number of the provider of care
- Diagnosis
- Type of services rendered, with diagnosis and/or procedure codes
- Date of services
- Charges

(5)     Send the above to the Claims Administrator at this address:

     Regional Care, Inc.
     905 West 27th Street
     Scottsbluff, Nebraska 69361
     (308) 635-2260 or (800) 795-7772

## WHEN CLAIMS SHOULD BE FILED

Claims should be filed with the Claims Administrator within 12 months of the date charges for the service were incurred. Benefits are based on the Plan's provisions at the time the charges were incurred. Claims filed later than that date may be declined or reduced unless the person is not legally capable of submitting the claim.

The Claims Administrator will determine if enough information has been submitted to enable proper consideration of the claim. If not, more information may be requested from the claimant. The Plan reserves the right to have a Plan Participant seek a second medical opinion.

## CLAIMS PROCEDURE

Following is a description of how the Plan processes Claims for benefits. A Claim is defined as any request for a Plan benefit, made by a claimant or by a representative of a claimant, that complies with the Plan's reasonable procedure for making benefit Claims. The times listed are maximum times only. A period of time begins at the time the Claim is filed. Decisions will be made within a reasonable period of time appropriate to the circumstances. "Days" means calendar days.

There are different kinds of Claims and each one has a specific timetable for either approval, payment, request for further information, or denial of the Claim. If you have any questions regarding this procedure, please contact the Plan Administrator.

Peters- - 000060

**Under what circumstances can the maximum coverage period be expanded?** If a Qualifying Event that gives rise to an 18-month or 29-month maximum coverage period is followed, within that 18- or 29-month period, by a second Qualifying Event that gives rise to a 36-months maximum coverage period, the original period is expanded to 36 months, but only for individuals who are Qualified Beneficiaries at the time of and with respect to both Qualifying Events. In no circumstance can the COBRA maximum coverage period be expanded to more than 36 months after the date of the first Qualifying Event. The Plan Administrator must be notified of the second Qualifying Event within 60 days of the second Qualifying Event. This notice must be sent to the Plan Sponsor in accordance with the procedures above.

**How does a Qualified Beneficiary become entitled to a disability extension?** A disability extension will be granted if an individual (whether or not the covered Employee) who is a Qualified Beneficiary in connection with the Qualifying Event that is a termination or reduction of hours of a covered Employee's employment, is determined under Title II or XVI of the Social Security Act to have been disabled at any time during the first 60 days of COBRA continuation coverage. To qualify for the disability extension, the Qualified Beneficiary must also provide the Plan Administrator with notice of the disability determination on a date that is both within 60 days after the date of the determination and before the end of the original 18-month maximum coverage. This notice should be sent to the Plan Sponsor in accordance with the procedures above.

**Does the Plan require payment for COBRA continuation coverage?** For any period of COBRA continuation coverage under the Plan, qualified beneficiaries who elect COBRA continuation coverage must pay for COBRA continuation coverage. Qualified beneficiaries will pay up to 102% of the applicable premium and up to 150% of the applicable premium for any expanded period of COBRA continuation coverage covering a disabled Qualified Beneficiary due to a disability extension. The Plan will terminate a Qualified Beneficiary's COBRA continuation coverage as of the first day of any period for which timely payment is not made.

**Must the Plan allow payment for COBRA continuation coverage to be made in monthly installments?** Yes. The Plan is also permitted to allow for payment at other intervals.

**What is Timely Payment for payment for COBRA continuation coverage?** Timely Payment means a payment made no later than 30 days after the first day of the coverage period. Payment that is made to the Plan by a later date is also considered Timely Payment if either under the terms of the Plan, covered employees or Qualified Beneficiaries are allowed until that later date to pay for their coverage for the period or under the terms of an arrangement between the Employer and the entity that provides Plan benefits on the Employer's behalf, the Employer is allowed until that later date to pay for coverage of similarly situated non-COBRA beneficiaries for the period.

Notwithstanding the above paragraph, the Plan does not require payment for any period of COBRA continuation coverage for a Qualified Beneficiary earlier than 45 days after the date on which the election of COBRA continuation coverage is made for that Qualified Beneficiary. Payment is considered made on the date on which it is postmarked to the Plan.

If Timely Payment is made to the Plan in an amount that is not significantly less than the amount the Plan requires to be paid for a period of coverage, then the amount paid will be deemed to satisfy the Plan's requirement for the amount to be paid, unless the Plan notifies the Qualified Beneficiary of the amount of the deficiency and grants a reasonable period of time for payment of the deficiency to be made. A "reasonable period of time" is 30 days after the notice is provided. A shortfall in a Timely Payment is not significant if it is no greater than the lesser of $50 or 10% of the required amount.

**Is COBRA continuation coverage available to domestic partners and children of domestic partners?** A domestic partner is treated as a Qualified Beneficiary. This gives the domestic partner the contractual rights outlined in this document but does not extend statutory provisions to the domestic partner.

**IF YOU HAVE QUESTIONS**
If you have questions about your COBRA continuation coverage, you should contact the Plan Sponsor. For more information about your rights under ERISA, including COBRA, the Health Insurance Portability and Accountability Act (HIPAA), and other laws affecting group health plans, contact the nearest Regional or District Office of the U.S. Department of Labor's Employee Benefits Security Administration (EBSA). Addresses and phone numbers of Regional and District EBSA Offices are available through EBSA's website at www.dol.gov/ebsa.

## KEEP YOUR PLAN ADMINISTRATOR INFORMED OF ADDRESS CHANGES

In order to protect your family's rights, you should keep the Plan Administrator informed of any changes in the addresses of family members. You should also keep a copy, for your records, of any notices you send to the Plan Administrator.

Peters- - 000077

## RESPONSIBILITIES FOR PLAN ADMINISTRATION

**PLAN ADMINISTRATOR.** Community Connections, Inc. Employee Benefit Plan is the benefit plan of Community Connections, Inc., the Plan Administrator, also called the Plan Sponsor. It is to be administered by the Plan Administrator in accordance with the provisions of ERISA. An individual may be appointed by Community Connections, Inc. to be Plan Administrator and serve at the convenience of the Employer. If the Plan Administrator resigns, dies or is otherwise removed from the position, Community Connections, Inc. shall appoint a new Plan Administrator as soon as reasonably possible.

The Plan Administrator shall administer this Plan in accordance with its terms and establish its policies, interpretations, practices, and procedures. It is the express intent of this Plan that the Plan Administrator shall have maximum legal discretionary authority to construe and interpret the terms and provisions of the Plan, to make determinations regarding issues which relate to eligibility for benefits, to decide disputes which may arise relative to a Plan Participant's rights, and to decide questions of Plan interpretation and those of fact relating to the Plan. The decisions of the Plan Administrator will be final and binding on all interested parties.

Service of legal process may be made upon the Plan Administrator.

### DUTIES OF THE PLAN ADMINISTRATOR.

(1)     To administer the Plan in accordance with its terms.

(2)     To interpret the Plan, including the right to remedy possible ambiguities, inconsistencies or omissions.

(3)     To decide disputes which may arise relative to a Plan Participant's rights.

(4)     To prescribe procedures for filing a claim for benefits and to review claim denials.

(5)     To keep and maintain the Plan documents and all other records pertaining to the Plan.

(6)     To appoint a Claims Administrator to pay claims.

(7)     To perform all necessary reporting as required by ERISA.

(8)     To establish and communicate procedures to determine whether a medical child support order is qualified under ERISA Sec. 609.

(9)     To delegate to any person or entity such powers, duties and responsibilities as it deems appropriate.

**PLAN ADMINISTRATOR COMPENSATION.** The Plan Administrator serves without compensation; however, all expenses for plan administration, including compensation for hired services, will be paid by the Plan.

**FIDUCIARY.** A fiduciary exercises discretionary authority or control over management of the Plan or the disposition of its assets, renders investment advice to the Plan or has discretionary authority or responsibility in the administration of the Plan.

**FIDUCIARY DUTIES.** A fiduciary must carry out his or her duties and responsibilities for the purpose of providing benefits to the Employees and their Dependent(s), and defraying reasonable expenses of administering the Plan. These are duties which must be carried out:

(1)     with care, skill, prudence and diligence under the given circumstances that a prudent person, acting in a like capacity and familiar with such matters, would use in a similar situation;

(2)     by diversifying the investments of the Plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(3)     in accordance with the Plan documents to the extent that they agree with ERISA.

Peters- - 000078

**THE NAMED FIDUCIARY.** A "named fiduciary" is the one named in the Plan. A named fiduciary can appoint others to carry out fiduciary responsibilities (other than as a trustee) under the Plan. These other persons become fiduciaries themselves and are responsible for their acts under the Plan. To the extent that the named fiduciary allocates its responsibility to other persons, the named fiduciary shall not be liable for any act or omission of such person unless either:

(1)    the named fiduciary has violated its stated duties under ERISA in appointing the fiduciary, establishing the procedures to appoint the fiduciary or continuing either the appointment or the procedures; or

(2)    the named fiduciary breached its fiduciary responsibility under Section 405(a) of ERISA.

**CLAIMS ADMINISTRATOR IS NOT A FIDUCIARY.** A Claims Administrator is not a fiduciary under the Plan by virtue of paying claims in accordance with the Plan's rules as established by the Plan Administrator.

**COMPLIANCE WITH HIPAA PRIVACY STANDARDS.** Certain members of the Employer's workforce perform services in connection with administration of the Plan. In order to perform these services, it is necessary for these employees from time to time to have access to Protected Health Information (as defined below).

Under the Standards for Privacy of Individually Identifiable Health Information (45 CFR Part 164, the "Privacy Standards"), these employees are permitted to have such access subject to the following:

(1)    **General.** The Plan shall not disclose Protected Health Information to any member of the Employer's workforce unless each of the conditions set out in this HIPAA Privacy section is met. "Protected Health Information" shall have the same definition as set out in the Privacy Standards but generally shall mean individually identifiable health information about the past, present or future physical or mental health or condition of an individual, including information about treatment or payment for treatment.

(2)    **Permitted Uses and Disclosures.** Protected Health Information disclosed to members of the Employer's workforce shall be used or disclosed by them only for purposes of Plan administrative functions. The Plan's administrative functions shall include all Plan payment and health care operations. The terms "payment" and "health care operations" shall have the same definitions as set out in the Privacy Standards, but the term "payment" generally shall mean activities taken with respect to payment of premiums or contributions, or to determine or fulfill Plan responsibilities with respect to coverage, provision of benefits, or reimbursement for health care. "Health care operations" generally shall mean activities on behalf of the Plan that are related to quality assessment; evaluation, training or accreditation of health care providers; underwriting, premium rating and other functions related to obtaining or renewing an insurance contract, including stop-loss insurance; medical review; legal services or auditing functions; or business planning, management and general administrative activities.

(3)    **Authorized Employees.** The Plan shall disclose Protected Health Information only to members of the Employer's workforce who are designated and are authorized to receive such Protected Health Information, and only to the extent and in the minimum amount necessary for these persons to perform duties with respect to the Plan. For purposes of this HIPAA Privacy section, "members of the Employer's workforce" shall refer to all employees and other persons under the control of the Employer.

(a)    **Updates Required.** The Employer shall amend the Plan promptly with respect to any changes in the members of its workforce who are authorized to receive Protected Health Information.

(b)    **Use and Disclosure Restricted.** An authorized member of the Employer's workforce who receives Protected Health Information shall use or disclose the Protected Health Information only to the extent necessary to perform his or her duties with respect to the Plan.

(c)    **Resolution of Issues of Noncompliance.** In the event that any member of the Employer's workforce uses or discloses Protected Health Information other than as permitted by the Privacy Standards, the incident shall be reported to the privacy official. The privacy official shall take appropriate action, including:

Peters - 000079

## GENERAL PLAN INFORMATION

### TYPE OF ADMINISTRATION

The Plan is a self-funded group health Plan and the administration is provided through a Third Party Claims Administrator. The funding for the benefits is derived from the funds of the Employer and contributions made by covered Employees. The Plan is not insured.

### PLAN NAME

Community Connections, Inc. Employee Benefit Plan

### PLAN NUMBER: 501

### TAX ID NUMBER: 74-2384155

### PLAN EFFECTIVE DATE: June 1, 2005

### RESTATEMENT DATES: June 1, 2009
June 1, 2010

### PLAN YEAR ENDS: May 31

### EMPLOYER INFORMATION

Community Connections, Inc.
281 Sawyer Drive
Durango, Colorado 81303
(970) 385-3444

### PLAN ADMINISTRATOR

Community Connections, Inc.
281 Sawyer Drive
Durango, Colorado 81303
(970) 385-3444

### NAMED FIDUCIARY

Community Connections, Inc.
281 Sawyer Drive
Durango, Colorado 81303

### AGENT FOR SERVICE OF LEGAL PROCESS

Community Connections, Inc.
281 Sawyer Drive
Durango, Colorado 81303

### CLAIMS ADMINISTRATOR

Regional Care, Inc.
905 West 27th Street
Scottsbluff, Nebraska 69361
(308) 635-2260 or (800) 795-7772

Peters- - 000084



*THIRD PARTY ADMINISTRATION / HEALTH PROMOTION*

January 10, 2011

Patricia M. Peters
6852 Road 21
CORTEZ, CO 81321

|  | | |
|---|---|---|
| RE: | Claimant: | **Mark Peters** |
|  | Date of Injury: | **June 23, 2010** |

Dear Mrs. Peters,

I am in receipt of your 2nd appeal letter regarding denial of claims for Mark Peters for an injury incurred June 23, 2010. Mr. Peters is a beneficiary of the Community Connections Inc. Employee Welfare Benefit Plan ("the Plan") for the dates of service encompassed in your appeal. Regional Care, Inc. is the third-party administrator of the Plan.

The Plan Document, along with the additional information that you have provided has been received and reviewed.    The Plan Sponsor's final decision to deny the claims was based upon the Plan Document and information provided by Mark. The Plan Document has the following exclusion:

(82)  **Worker's Compensation.** Expenses for or in connection with any Injury or Illness which arises out of or in the course of any occupation for which the Covered Person would be entitled to compensation under any workers' compensation act, law, or similar legislation, *including those situations whereby the Covered Person lawfully chose not to be covered or waived or failed to assert his/her rights under a workers' compensation law, act, or similar legislation.*

Expenses for Injuries or Illness which were eligible for payment under Worker's Compensation or similar law and have reached the maximum reimbursement paid under Worker's Compensation or similar law will not be eligible for payment under this Plan.

Based upon the Community Connections Inc., Employee Welfare Plan Document, your appeal has been denied. The additional information that was provided included:

* 2009 1040 Tax Return
* 2009 Schedule F

The Schedule F, which is the Profit or Loss from Farming, clearly indicates that the Principal Product is Animal and Hay Production.   Mr. Peter's injury was incurred during Hay Production, which according to your 2010 Schedule F, is your principal product from your farming operations. Accordingly, the Plan has made its final determination regarding this claim.

Regional Care, Inc.
905 West 27th Street, Scottsbluff, NE 69361
Phone: 308-635-2260  Fax: 308-635-2018  Watts: 1-800-795-7772



RCI(Peters)- - 000305

Page 2

If you elect to pursue arbitration please make such a request in writing to the Plan Sponsor, Community Connections Inc. In the event you elect arbitration the cost of counsel for Mr. Peters would be borne by him.

Sincerely,

Stephen W. Hetzel
President

RCI(Peters)- - 000306